[Cite as *State v. Rager*, 2026-Ohio-2843.]

# IN THE OHIO COURT OF APPEALS
## FIFTH APPELLATE DISTRICT
## FAIRFIELD COUNTY, OHIO

| | |
|---|---|
| STATE OF OHIO | Case No. 25-CA-043 |
| Plaintiff - Appellee | <u>Opinion and Judgment Entry</u> |
| -vs- | Appeal from the Municipal Court, TRC25 04168 |
| HAYDEN B. RAGER | Judgment: Affirmed |
| Defendant - Appellant | Date of Judgment Entry: July 23, 2026 |

**BEFORE:** Andrew J. King; Kevin W. Popham; David M. Gormley, Judges

**APPEARANCES:** JOSEPH M. SABO, for Plaintiff-Appellee; AARON CONRAD, for Defendant-Appellant.

*King, P.J.*

{¶ 1}  Defendant-Appellant Hayden Rager appeals the October 3, 2025 judgment of the Fairfield County Municipal Court which found him guilty of operating a vehicle under the influence (OVI). Plaintiff-Appellee is the State of Ohio. We affirm the trial court.

### Facts and Procedural History

{¶ 2}  On June 1, 2025 at 2:08 a.m., Ohio State Highway Patrol Trooper Warren clocked Rager driving his Nissan sedan at 47 miles per hour in a 35-mile-per-hour zone. As Trooper Warren followed Rager, Rager committed a marked lanes violation and then failed to stop behind a stop bar by an entire car length. Based on these observations, Warren initiated a traffic stop.

{¶ 3} Upon approaching the Nissan, Warren observed four occupants and numerous open and sealed Twisted Tea alcoholic beverage containers throughout the vehicle. Warren also noted a strong odor of alcoholic beverage coming from inside the vehicle. The four occupants of the Nissan were all 18 or 19 years old and all made furtive movements attempting to hide the beverage containers. Despite exhibiting bloodshot, glassy eyes, Rager denied consuming alcohol.

{¶ 4} Warren asked Rager to exit his vehicle. Once Rager was outside of the car, Warren continued to smell alcohol coming from Rager's breath. Warren therefore administered field sobriety tests. On the walk-and-turn test (WAT), Trooper Warren observed two of eight clues. Based on the totality of the circumstances, Warren arrested Rager for OVI. At 3:05 a.m., Rager submitted to a chemical breath test which indicated Rager's breath alcohol level was .095; well above the .02 limit for persons under 21.

{¶ 5} Rager was subsequently cited for one count of OVI pursuant to R.C. 4511.19(A)(1)(a), one count of OVI pursuant to R.C. 4511.19(A)(1)(b), one count of OVI pursuant to R.C. 4511.19(A)(1)(d), one count of improper use of marked lanes pursuant to R.C. 4511.33, one count of speeding pursuant to R.C. 4511.21(B)(3), and one count of failure to stop at a stop sign pursuant to R.C. 4511.43.

{¶ 6} Rager filed a motion to suppress arguing 1.) there was no reasonable, articulable suspicion to detain him; 2.) there was no reasonable suspicion to justify continued detention to conduct field sobriety testing; 3.) there was no probable cause to arrest him; 4.) any oral statements prior to being provided Miranda warnings should be suppressed; 5.) the trooper failed to comply with the Ohio Department of Health regulations when administering

the breath alcohol test; and 6.) the field sobriety testing was not administered in substantial compliance with the National Highway Traffic Safety Administration (NHTSA) standards.

{¶ 7} The trial court held a hearing on Rager's motion on August 6, 2025 and August 27, 2025. Rager did not go forward on his challenge to the Miranda warnings or the breath test. Following the hearing the parties filed closing briefs. On September 26, 2025 the trial court denied Rager's motion to suppress.

{¶ 8} On October 30, 2025, Rager entered a plea of no contest to one count of OVI pursuant to R.C. 4511.19(A)(1)(a). The State dismissed the balance of the charges.

{¶ 9} Rager filed an appeal and the matter is now before this court for consideration. He raises three assignments of error as follows:

I

{¶ 10} "THE TRIAL COURT ERRED IN FINDING THAT TROOPER WARREN HAD REASONABLE SUSPICION TO EXPAND THE STOP INTO AN OVI INVESTIGATION."

II

{¶ 11} "THE TRIAL COURT ERRED IN FINDING THAT THE WALK AND TURN TEST WAS ADMINISTERED IN SUBSTANTIAL COMPLIANCE WITH NHTSA STANDARDS."

III

{¶ 12} "THE TRIAL COURT ERRED IN CONCLUDING THAT TROOPER WARREN HAD PROBABLE CAUSE TO ARREST DEFENDANT FOR OVI."

{¶ 13} As an initial matter, each of Rager's challenges pertain to the trial court's ruling on a motion to suppress.

{¶ 14} There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. *State v. Fanning,* 1 Ohio St.3d 19 (1982); *State v. Klein*, 73 Ohio App.3d 486 (4th Dist. 1991); *State v. Guysinger*, 86 Ohio App.3d 592 (4th Dist. 1993). Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. *State v. Williams*, 86 Ohio App.3d 37 (4th Dist. 1993). Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. *State v. Curry*, 95 Ohio App.3d 93 (8th Dist. 1994); *State v. Claytor*, 85 Ohio App.3d 623 (4th Dist. 1993); *Guysinger*, supra. As the United States Supreme Court held in *Ornelas v. U.S.* 517 U.S. 690, 699 (1996), "... as a general matter determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal."

{¶ 15} When ruling on a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and to evaluate the credibility of witnesses. See *State v. Dunlap*, 73 Ohio St.3d 308, 314 (1995); *State v. Fanning*, 1 Ohio St.3d 19 (1982).

## I, III

{¶ 16} For ease of discussion, we address Rager's first and third assignments of error together. In his first assignment of error, Rager argues the trial court erred in finding Trooper Warren had reasonable suspicion to expand the traffic stop into an OVI stop. In his third assignment of error, Rager argues Warren did not have probable cause to arrest him for OVI. We disagree.

### Applicable Law

### OVI Traffic Stops

{¶ 17} " '[W]hen detaining a motorist for a traffic violation, an officer may delay the motorist for a time period sufficient to issue a ticket or a warning.' " *State v. Batchili*, 2007-Ohio-2204, ¶ 12, quoting *State v. Keathley*, 55 Ohio App.3d 130, 131 (2d Dist. 1988). However, "the detention of a stopped driver may continue beyond [the normal] time frame when additional facts are encountered that give rise to a reasonable, articulable suspicion of criminal activity beyond that which prompted the initial stop." *Batchili*, ¶ 15. "In determining whether a detention is reasonable, the court must look at the totality of the circumstances." *State v. Matteucci*, 2003-Ohio-702, ¶ 30 (11th Dist.), citing *State v. Bobo*, 37 Ohio St.3d 177, 178 (1988); *State v. Roberts*, 2023-Ohio-2763, ¶ 16 (5th Dist.).

{¶ 18} The intrusion on the driver's liberty resulting from a field sobriety test is minor, and the officer therefore need only have reasonable suspicion the driver is under the influence of alcohol to conduct a field sobriety test. See *State v. Bright*, 2010-Ohio-1111, ¶17 (5th Dist.); *State v. Toure*, 2023-Ohio-2559, ¶ 23 (5th Dist.) When analyzing the facts presented during a prolonged traffic stop, this court has accepted the guidance set forth in *State v. Batchili*, 2007-Ohio-2204, paragraph two of the syllabus: "The "reasonable and articulable" standard applied

to a prolonged traffic stop encompasses the totality of the circumstances, and a court may not evaluate in isolation each articulated reason for the stop."

{¶ 19} In *State v. Roberts*, 2023-Ohio-2763, ¶ 17 (5th Dist.), this court noted:

> Reasonable suspicion is something more than an inchoate or unparticularized suspicion or hunch, but less than the level of suspicion required for probable cause. *State v. Shepherd*, 122 Ohio App.3d 358, 364, 701 N.E.2d 778 (2nd Dist. 1997). A court will analyze the reasonableness of the request based on the totality of the circumstances, viewed through the eyes of a reasonable and prudent police officer on the scene who must react to events as they unfold. *State v. Farey*, 5th Dist. Stark, 2018-Ohio-1466, ¶ 23, 110 N.E.3d 960, citing *Village of Kirtland Hills v. Strogin*, 6th Dist. Lake App. No. 2005-L-073, 2006-Ohio-14501, ¶ 13, 2006 WL 76654 (Cleaned up.)

{¶ 20} Decisions regarding reasonable suspicion are fact intensive. *State v. Burkhart*, 2016-Ohio-7534, ¶15, 64 N.E.3d 1004 (4th Dist.); *State v. Toure*, 2023-Ohio-2559, ¶ 26 (5th Dist.); *State v. Pierce*, 2024-Ohio-1560, ¶ 30 (5th Dist.); *State v. Lopez*, 2024-Ohio-2394, ¶ 39, 246 N.E.3d 681 (7th Dist.). Ohio courts often reach differing conclusions when faced with seemingly similar circumstances. Numerous factors may be considered, and small differences between officers' descriptions of an encounter can form the basis for opposite outcomes. *State v. Watkins*, 2021-Ohio-1443, ¶ 26, 170 N.E.3d 549 (6th Dist.); *State v. Martorana,* 2023-Ohio-662, ¶ 34 (6th Dist.); *Toure* at ¶ 26; *Pierce* at ¶ 30; *Reynolds* at ¶ 32.

## Probable Cause to Arrest

{¶ 21} Recently in *State v. Smith* 2026-Ohio-2630 (5th Dist) at ¶ 10, we noted:

> [T]he test for determining whether a law-enforcement officer has probable cause to arrest a person for a suspected OVI offense is whether, "at the moment of arrest," the officer has sufficient information "derived from a reasonabl[y] trustworthy source of facts and circumstances" to cause a prudent person to believe that the suspect was driving under the influence. *State v. Benson*, 2025-Ohio-2699, ¶ 15 (5th Dist.). In evaluating that determination, a reviewing court must "examine the 'totality' of facts and circumstances surrounding the arrest." *State v. Homan*, 89 Ohio St.3d 421, 427, 2000-Ohio-212, 732 N.E.2d 952.

## Rager's Arguments

{¶ 22} Rager argues Trooper Warren's cruiser camera disproves his allegation of a marked lanes violation and a stop bar violation and there were no other indicia of impairment. He argues Warren therefore lacked sufficient facts to expand the stop into an OVI investigation or to arrest him for OVI.

{¶ 23} Even if we were to assume, arguendo, that the trooper's stop bar and marked lanes observations were erroneous, we find the trial court did not err in finding the trooper had reasonable suspicion to expand the stop. Rager ignores the presence of other indicia of impairment including 1.) he was speeding; 2.) he and his companions were all 18 or 19 years of age and unable to legally possess or consume alcohol; 3.) the stop was made at 2:00 a.m.

on a Sunday morning; 4.) the trooper observed the occupants of the Ford attempting to hide both open and sealed containers of alcohol; 5.) the odor of alcohol coming from Rager; 6.) Rager exhibited glassy, bloodshot eyes; and 7.) the fact that he exhibited two clues on the WAT test. Transcript of suppression hearing (T.) at 10, 13, 16-18, 20-21, 25, 36, and State's exhibits A and B. Based on these facts, the totality of the circumstances demonstrates ample reasonable, articulable suspicion to expand the stop for field sobriety testing.

{¶ 24} Moreover, for the same reasons, we find Trooper Warren had sufficient information amounting to probable cause to arrest Rager for OVI. While Rager performed relatively well on field sobriety testing, that testing is but one consideration in determining probable cause based on the totality of the circumstances. *State v. Farey*, 2018-Ohio-1466 ¶ 32 (5th Dist.) ("Probable cause does not necessarily have to be based, in whole or in part, upon a suspect's good or poor performance on one or more field sobriety tests. Poor performance on one test and adequate performance on others may establish probable cause to arrest."). The totality of the facts and circumstances indicated Rager was operating his vehicle under the influence.

{¶ 25} Rager's first and third assignments of error are overruled.

## II

{¶ 26} In his second assignment of error, Rager argues the trial court erred in finding the WAT test was administered in substantial compliance with NHTSA standards. We disagree.

{¶ 27} Under this assignment of error, Rager challenges the trial court's findings of fact. We must therefore must determine whether said findings of fact are against the manifest weight of the evidence. On review for manifest weight, a reviewing court is to examine the

entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). See also, *State v. Thompkins*, 78 Ohio St.3d 380 (1997). The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Martin* at 175.

{¶ 28} The admissibility of results of field sobriety tests is governed by R.C. 4511.19(D)(4)(b), which states:

> In any criminal prosecution . . . for a violation of division (A) or (B) of this section, . . . if a law enforcement officer has administered a field sobriety test to the operator of the vehicle involved in the violation and if it is shown by clear and convincing evidence that the officer administered the test in substantial compliance with the testing standards for any reliable, credible, and generally accepted field sobriety tests that were in effect at the time the tests were administered, including, but not limited to, any testing standards then in effect that were set by the national highway traffic safety administration, all of the following apply:
>
> (i) The officer may testify concerning the results of the field sobriety test so administered.

(ii) The prosecution may introduce the results of the field sobriety test so administered as evidence in any proceedings in the criminal prosecution . . .

(iii) . . . [I]f the testimony or evidence is admissible under the Rules of Evidence, the court shall admit the testimony or evidence and the trier of fact shall give it whatever weight the trier of fact considers to be appropriate.

{¶ 29} "In other words, the results of the field sobriety tests are not admissible at trial unless the state shows by clear and convincing evidence that the officer administered the test in substantial compliance with NHTSA guidelines." *State v. Codeluppi*, 2014-Ohio-1574, ¶ 11. "Clear and convincing evidence is that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus. "Errors that are excusable under the substantial-compliance standard are characterized as 'minor procedural deviations.'" *State v. Parks*, 2013-Ohio-2492, ¶ 17 (5th Dist.), quoting *Burnside* at ¶ 34, citing *State v. Homan*, 89 Ohio St.3d 421, 426 (2000), superseded by statute on other grounds as recognized in *State v. Boczar*, 2007-Ohio-1251.

{¶ 30} Here, the State showed by clear and convincing evidence that Trooper Warren administered the WAT test in substantial compliance with NHTSA standards. The State introduced, and the trial court admitted into evidence, the NHTSA standards for the WAT

test. State's Exhibit C. The standards require an officer to first instruct the suspect of the initial positioning, which requires the suspect to stand with his arms down at his side, and to place one foot directly in front of the other in a line. The suspect is then told to remain in that position while further instructions are given. Further instructions include, the method by which the suspect walks while touching his heel to his toe for every step, counting the nine steps aloud while walking down the line, and making a turn with small steps with one foot while keeping the other foot on the line. The officer is also directed to demonstrate the instructions to ensure that the suspect fully understands. State's Exhibit C at 41-43.

{¶ 31} Trooper Warren testified that he gave the test instructions as required by the NHTSA manual and Rager exhibited two of eight clues. T. 33-38. The trial court found Warren's testimony indicating he instructed Rager properly on the WAT test and also properly demonstrated the test was corroborated by Warren's body camera video. Judgment Entry, September 26, 2025, docket item 31 at 3. Rager argues Warren issued conflicting instructions, however, his complaint is not supported by the evidence. During his demonstration, Warren properly showed Rager how to perform the test. When asked if he had any questions, Rager denied he did and further indicated that he understood how to perform the test. State's exhibit B.

{¶ 32} Rager further argues Warren asked him to perform the test on a sloped surface. The NHTSA manual calls for the tests to be conducted on a "*reasonably* dry, hard, level, nonslippery surface." State's exhibit C (Emphasis added.) Field sobriety testing is just that—tests conducted in the field where conditions will rarely be perfect. *State v. Benson,* 2002-Ohio-6942, ¶ 10 (11th Dist.) State's exhibit B demonstrates, however, that Warren moved Rager

from the sidewalk, which was cracked, to the roadway in order to ensure the test was conducted on a reasonably level surface.

{¶ 33} Upon examination of the entire record, we find the trial court did not lose its way in weighing the evidence and concluding that Warren substantially complied with the NHTSA standards while instructing Rager as to the performance of the WAT test and in concluding the test was performed on a reasonably level surface. Accordingly, the second assignment of error is overruled.

{¶ 34} The judgment of the Fairfield County Municipal Court is affirmed. Costs to Appellant.

By: King, P. J.

Popham, J. and

Gormley, J. concur.